IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD A. MILLER, JR.,** | : | **Civil No. 1:17-CV-1368** |
| **Plaintiff,** | : | |
| v. | : | |
| **COUNTY OF LEBANON TRANSIT AUTHORITY d/b/a LEBANON TRANSIT,** | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

In this action, Plaintiff has brought claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 42 P.S. §§ 951-963, against his former employer for discrimination and failure to accommodate. Presently before the court are cross-motions for summary judgment as to all claims (Docs. 17 & 22) and Defendant's motion *in limine* (Doc. 25). For the reasons stated herein, both motions for summary judgment will be denied, and Defendant's motion *in limine* will be granted in part and denied in part.

## I. Background

In considering the instant motion, the court relied on the uncontested facts or where the facts were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to the nonmoving party.

1

### A. <u>Facts</u>

County of Lebanon Transit Authority doing business as Lebanon Transit ("Defendant") is a public transit authority that provides fixed-route and shared ride services in its service area. As of December 2017, Defendant employed approximately forty-seven people and that number was generally the same in February 2016. At its peak service time, Defendant operates twelve fixed-route buses Monday through Friday and twelve mini-buses. On Saturdays, five to six fixed-route buses and two mini-buses are in operation. Defendant's routes primarily service Lebanon County with several buses operating daily in Dauphin County and one day per week in Lancaster County.

Plaintiff, Richard A. Miller, Jr., began his employment with Defendant on July 13, 2011, as a Mechanic I. Prior to his employment, Plaintiff had a Commercial Driver's License ("CDL") but did not have a passenger endorsement ("P endorsement"). As a requirement of his employment, Plaintiff obtained his P endorsement and passed a Department of Transportation ("DOT") physical examination. In February 2016, Plaintiff was employed by Defendant as a Mechanic II. Plaintiff was aware of the job description and requirements when he obtained the Mechanic II position on March 24, 2015.

The Mechanic II job description[1] involves diagnosing, repairing, and maintaining Defendant's vehicles. (Doc. 16-3, p. 2-3 of 133.) Other tasks specifically outlined in the description include performing Pennsylvania State Inspections, road tests, and road calls. (*Id.*) To be qualified for the Mechanic II position, an individual must have a valid Pennsylvania CDL with the P endorsement amongst other qualifications. (*Id.*) The description further states that it is not all-inclusive and that the Executive Director may make adjustments, "including the addition of other duties or responsibilities, as long as the changes do not significantly change the primary focus of the duties and responsibilities for this position." (*Id.* at 3 of 133.) Defendant's Driver and Maintenance Handbook ("the Handbook") also provides that all mechanics are required to maintain "a minimum Pennsylvania Class B Commercial Driver's License with Passenger Endorsement." (Doc. 24-1, p. 104 of 140.) The physical requirements set forth in the Handbook require that "every Driver and Maintenance Department Employee shall pass a United States Department of Transportation (DOT) physical examination prior to being hired." (*Id.* at 105 of 140.)

Defendant's representatives testified that road tests are conducted when a mechanic performs a service, repair, or inspection of a vehicle. There is a defined

---

[1] The Mechanic I job description is identical to the tasks and qualifications at issue in this case. (Doc. 16-3, pp. 25-26 of 133.)

eight-mile route off Defendant's premises that mechanics drive for road tests. Road calls occur when a bus breaks down and a mechanic must leave the garage to determine the issue, possibly repair the bus on the road, or bring it back to the garage. It is typical to have at least a couple road calls per week. (Doc. 24-1, p. 63 of 140.) Depending on the issue, a replacement bus may be needed, and the mechanic may need to take the replacement bus to the scene. If the repair is minor, the mechanic can drive a service truck, *i.e.* a pick-up truck, to the call and address the repair on-scene. (*Id.* at 63 of 140.) Road calls should be performed as soon as possible following a call to minimize any service interruptions. Generally, mechanics are alone when conducting road calls unless they are training another mechanic. A mechanic also needs to drive buses to Harrisburg or York, Pennsylvania if the vehicle needs repairs that exceeds Defendant's ability. (*Id.* at 15 of 41.)

In the event of an accident, mechanics respond to the scene to determine whether a replacement bus or van is needed and may need to drive that replacement vehicle to the scene. Terry Smith, Defendant's Manager of Operations, testified that it is possible that a mechanic would need to operate a bus with passengers onboard in the event of an emergency, although he does not have any memory of this previously occurring. (Doc. 16-2, pp. 14-15 of 41.) Teresa Giurintano, Defendant's Executive Director, also testified that mechanics have always been required to be certified to transport passengers in case of an emergency. (Doc. 24-1, p. 30 of 140.)

She further explained that Defendant is on the Lebanon County Emergency Management Agency list, which could require Defendant to provide assistance in an emergency. (Doc. 24-1, p. 28 of 140.) At the time of Plaintiff's termination, Defendant had numerous employees with a CDL with a P endorsement and DOT Medical Examiner's Certification, including Mr. Smith; Tony Schwarz, Facility Manager; Carl Pysher, Safety and Training Manager; Valerie Snyder, Fixed-Route Supervisor; fourteen to sixteen bus drivers; and four mechanics. (Doc. 24-1, pp. 59-60 of 140.)

Plaintiff has been a diabetic throughout his employment with Defendant. On February 9, 2016, Plaintiff reported that he had become insulin dependent. As a result of this, Defendant required Plaintiff to have a new DOT physical examination by a medical provider. Following an examination, the medical provider voided Plaintiff's DOT Medical Examiner's Certification. Defendant terminated Plaintiff's employment in person on February 11, 2016, and provided a termination letter on February 12, 2016. The letter provided that an essential function of the Mechanic II position is the ability to operate Defendant's vehicles for tasks such as road tests. (Doc. 24-1, p. 77 of 140.) Because Plaintiff was no longer medically certified to hold the appropriate CDL, the Federal Motor Carrier Safety Regulations ("FMCSRs") prohibited him from operating a commercial motor vehicle. (*Id.*) For this reason, Defendant stated it could not continue to employ Plaintiff as a Mechanic II and had

no other open positions that did not require the operation of vehicles. (*Id.*) Defendant noted that if Plaintiff could obtain a waiver of the physical requirements of the DOT Medical Examiner's Certification, he could reapply for a mechanic position. (*Id.*)

Plaintiff filed a grievance with Teamsters Local 429 on February 16, 2016, arguing that he met the federal and state regulations to carry a CDL under the self-certification rules, he was in the process of obtaining a diabetic waiver, and believed he was being discriminated against due to his disability. (*Id.* at 87-88 of 140.) On February 23, 2016, Defendant denied Plaintiff's grievance for two reasons. (*Id.* at 90-91 of 140.) First, Plaintiff's grievance failed to comply with the grievance procedures. Second, management can determine qualifications for employees. (*Id.*) One of the qualifications for a Mechanic II is the appropriate physical certifications, which was revoked following a DOT medical examination. (*Id.*) Defendant encouraged Plaintiff to reapply if he obtained a waiver of the DOT physical requirements or if a position became available that did not require Plaintiff to operate Defendant's vehicles. (*Id.* at 91 of 140.)

On February 25, 2016, counsel for Plaintiff wrote to Defendant disagreeing with the reasons for Plaintiff's termination citing to the ADA, identifying diabetes as a disability and the aspects of Defendant's policy counsel believed to be discriminatory, and discussing reasonable accommodations. (Doc. 24-1, pp. 79-82 of 140.) Counsel requested that Plaintiff be immediately reinstated with the

reasonable accommodation not to perform road tests. (*Id.* at 81 of 140.) Defendant's counsel responded on March 11, 2016, denying Plaintiff's reinstatement stating that the Mechanic II position required performance of road calls and road tests in all of Defendant's vehicles, which necessitated the appropriate DOT medical certification. (Doc. 24-1, pp. 84-85 of 140.) Because of Defendant's limited work force, each employee is required to perform all essential functions of his or her position. (*Id.* at 84 of 140.) Further, counsel stated that Defendant is only required to provide reasonable accommodations if the employee can still perform his or her essential job functions and, since Plaintiff could not perform his essential job functions, the accommodation was not reasonable. (*Id.*) Plaintiff was once again invited to reapply with Defendant if he received a DOT medical waiver. (*Id.* at 85 of 140.)

On October 1, 2017, Plaintiff applied for a diabetes waiver as part of the Federal Diabetes Exemption Program through the Federal Motor Carrier Safety Administration ("FMCSA"). (Doc. 16-3, p. 131 of 133.) The FMCSA replied on October 13, 2017, stating that Plaintiff's application could not be considered because he exclusively operates vehicles in intrastate commerce and the FMCSRs are only applicable to interstate commerce drivers. (*Id.* at 132 of 133.) It was recommended that Plaintiff check with his state licensing office "for further instructions regarding the possibility of obtaining a state waiver to operate in intrastate commerce." (*Id.*)

7

The parties do not dispute that Plaintiff was qualified for and competent in the Mechanic II position until his DOT Medical Examiner's Certificate was voided. Ms. Giurintano testified that Defendant had no issues with Plaintiff's work performance and agreed that but for his insulin dependence and voidance of the DOT Medical Examiner's Certificate, he would still be employed by Defendant. In reference to reasonably accommodating Plaintiff's disability, Ms. Giurintano testified that she did not believe she could provide any accommodation because of the Mechanic II job description. (Doc. 24-1, p. 38, 46 of 140.) Due to the small staff and the fact that only one mechanic is on duty at a time, Ms. Giurintano believes that every mechanic needs to be able to perform all the duties that is required of him or her. (*Id.* at 38-39 of 140.) Further, Ms. Giurintano and Mr. Smith testified that Plaintiff did not request a reasonable accommodation prior to or following his termination, but if he had done so, there was no accommodation possible or reasonable.

### B. Procedural History

On April 27, 2016, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"), which was dual-filed with the United States Equal Employment Opportunity Commission ("EEOC"). (Docs. 1-2; 1-3.) On May 2, 2017, and July 31, 2017, the PHRC and the EEOC notified Plaintiff of his right to sue. (Docs. 1-2, 1-3.) Plaintiff filed the instant complaint on August 3, 2017 (Doc. 1), which Defendant answered on September 1, 2017 (Doc. 7). Following discovery,

Defendant filed a motion for summary judgment, brief in support thereof, and a statement of facts on June 4, 2018. (Docs. 16-18.) Plaintiff filed a motion for summary judgement, brief in support thereof, and statement of facts on June 13, 2018. (Docs. 22-24.) On June 15, 2018, Defendant filed a motion *in limine* to exclude the testimony of Plaintiff's expert, Surendra Sivarajah, and a *Daubert* motion. (Doc. 25.) All three motions have been fully briefed and are ripe for disposition.

## II. Cross Motions for Summary Judgment

### A. Legal Standard

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment. Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law, and is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

9

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### B. Discussion

In its motion for summary judgment, Defendant argues that it should be awarded summary judgment because Plaintiff cannot establish a *prima facie* case of discrimination. (Doc. 18, pp. 17-37.) Defendant further argues that Plaintiff waived his failure to make a reasonable accommodation claim because he did not pursue that claim before the PHRC. (*Id.* at 19-22.) Alternatively, if Plaintiff properly raised his claim before the PHRC, Defendant argues that any accommodations would be outside the realm of reasonableness. (*Id.* at 34-37.) Conversely, Plaintiff argues in his motion for summary judgment that he has met his burden and demonstrated that Defendant discriminated against him on the basis of his disability in violation of the ADA and PHRA. (Doc. 23, pp. 17-20 of 29.) Additionally, Plaintiff contends that he is entitled to relief for Defendant's failure to engage in an interactive process with Plaintiff to determine whether it could reasonably accommodate his disability. (*Id.* at 20-27 of 29.)

Because the standard governing Plaintiff's ADA claim is substantially similar to the standard governing Plaintiff's claim under the PHRA, the court will analyze them collectively. *See Meyer v. Callery Conway Mars HV, Inc.*, No. 13-cv-109, 2015 WL 65135, *5 (W.D. Pa. Jan. 5, 2015) ("The Pennsylvania courts ordinarily construe the provisions of the PHRA to be coterminous with their federal counterparts."); *see also Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (treating PHRA and

ADA claims coextensively); *Burton v. Heckmann Water Res.*, No. 13-cv-0880, 2015 WL 1427971, *8 n.3 (M.D. Pa. Mar. 27, 2015) (analyzing PHRA and Title VII claims collectively) (citation omitted)).

The ADA and PHRA claims are analyzed according to the burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Wilson v. Mobilex USA Inc.*, 406 F. App'x 625, 626 (3d Cir. 2011). "Under *McDonnell Douglas*, a plaintiff must shoulder the initial burden of making out a prima facie case of discrimination. If the plaintiff does so, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. Once the defendant does so, the presumption of discriminatory action is rebutted and the plaintiff must prove that the defendant's stated reasons are a pretext for unlawful discrimination." *Id.* at 626-27 (citing *McDonnell Douglas*, 411 U.S. at 802-04). However, when there is a question of fact regarding an element in the *prima facie* case, the court need not address this burden shifting framework until the factual dispute is resolved. *See generally Supinski v. United Parcel Service, Inc.*, 413 F. App'x 536 (3d Cir. 2011).

Plaintiff's complaint raises claims under the ADA for disability discrimination and a failure to accommodate. In order to establish a *prima facie* case of discrimination based on a disability under the ADA, a plaintiff must demonstrate that he (1) had a disability as defined by the ADA; (2) was a "qualified individual;"

and (3) suffered an adverse employment action because of his disability. *Turner v. Hershey Chocolate U.S.A.*, 440 F.3d 604, 611 (3d Cir. 2006). A "qualified individual" is defined as a person who can "perform the essential functions" of the job "with or without reasonable accommodation." 42 U.S.C. § 12111(8). In this case, the parties agree that Plaintiff's diabetes is a disability and that Plaintiff was terminated due to his insulin dependency and voidance of his DOT Medical Examiner's Certification. The issue is whether Plaintiff was qualified to perform the essential functions of the Mechanic II position with or without reasonable accommodation.

The "essential functions" of a position are "the fundamental job duties," not "marginal functions" of the job. *Supinski*, 413 F. App'x at 540 (quoting 29 C.F.R. § 1630.2(n)(1)). A job duty may be considered essential because "(1) 'the reason the position exists is to perform that function,' (2) only a limited number of employees are available 'among whom the performance of that job function can be distributed,' or (3) the function is 'highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform that particular function.'" *Id.* (quoting 29 C.F.R. § 1630.2(n)(2)). Evidence that a particular job function is essential may include, but is not limited to:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

*Id.* (quoting 29 C.F.R. § 1630.2(n)(3)). "Whether a particular function is essential is a factual determination that must be made on a case by case basis [based upon] *all* relevant evidence." *Id.* (quoting *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3d Cir. 1998) (internal quotations omitted); *see also Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 279 (3d Cir. 2001). While Plaintiff has the burden of showing that he is a qualified individual, the employer "has the burden of showing a particular job function is an essential job function." *Supinski*, 413 F. App'x at 540 (quoting *Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir. 2007)) (citing *Ward v. Mass. Health Research Inst., Inc.*, 209 F.3d 29, 35 (1st Cir. 2000)).

A reasonable accommodation may include job restructuring or reassignment to an open position. *Supinski*, 413 F. App'x at 542 (citing 42 U.S.C. § 12111(9)(B)). "An employer may be required to restructure a job by reallocating or redistributing nonessential, marginal job functions; however, the employer is not required to reallocate essential functions." *Id.* (quoting 29 C.F.R. pt. 1630, app. 1630.2(o)) (internal quotations omitted); *see also Skerski*, 257 F.3d at 285 n.4 ("[E]mployers

14

are not required to accommodate an employee by removing an essential function or restructuring a job so as to avoid it, but, rather, they are to provide an accommodation so as to enable the employee to perform such a function.")

The parties do not dispute that conducting Pennsylvania State Inspections and road tests are a part of the essential functions of the Mechanic II position. However, Plaintiff suggests that road calls and driving passengers in emergency circumstances are not essential functions because they do not occur on a daily basis. He further argues that he could drive a service truck, rather than a bus, and still conduct the road calls. Conversely, Defendant argues that driving its vehicles for any reason is an essential function of the job requiring an employee to have a DOT Medical Examiner's Certificate. The court agrees with Defendant that requiring such a certificate is not a *per se* violation of the ADA, but only if such a certificate is necessary to perform the job with or without reasonable accommodation. Defendant presented written job descriptions and requirements identifying road tests and road calls as essential functions and provided testimony regarding the same. However, the parties do not present any evidence of written policies stating that a mechanic will be required to drive passengers in emergency circumstances. Defendant also suggests that it would need to have another mechanic on duty with Plaintiff if he cannot perform all the duties of his position.

Plaintiff further argues that he qualifies for excepted intrastate travel under Pennsylvania's Self-Certification/Medical Examiner's Certification, which would permit him to drive within the boundaries of Pennsylvania without a DOT Medical Examiner's Certificate.[2] (Doc. 24-1, pp. 114-124 of 140.) Defendant contends, however, that such self-certification is not sufficient for the Mechanic II position because the DOT Medical Examiner's Certificate is a requirement of employment due to the type and nature of driving duties.

The court cannot conclude that no reasonable juror could find that maintaining a DOT Medical Examiner's Certificate is an essential function of the Mechanic II position. Thus, the court finds that genuine issues of material fact exist as the essential functions of the position and this matter is best suited to be decided by a jury. Likewise, because an issue of fact remains as to whether a DOT Medical Examiner's Certificate is an essential function of the position, whether Defendant failed to accommodate Plaintiff's disability is also a question for the trier of fact. *See Supinski*, 413 F. App'x 536 (3d Cir. 2011); *Jackson v. Gannett Co., Inc.*, No. 08-cv-

---

[2] There are four categories for driving commercial vehicles on the Self-Certification Form: non-excepted interstate; non-excepted intrastate; excepted interstate; and excepted intrastate. (Doc. 24-1, pp. 114-124 of 140.) The excepted intrastate category is for individuals who have a CDL, only drive within the boundaries of Pennsylvania, and do not carry a DOT Medical Examiner's Certificate. (*Id.*) This category is limited but applies to, among others, drivers employed by the federal or a state government, or any political subdivision of a state who operates in intrastate commerce, and "[i]nspection mechanics who operate within a 25 mile radius of the maintenance facility for the purpose of conducting a road test." (*Id.* at 115 of 140.) Interestingly, school bus drivers are also exempt from obtaining a DOT Medical Examiner's Certificate. (*Id.*)

16

6403, 2011 WL 3362154 (D.N.J. Aug. 3, 2011). Accordingly, both motions for summary judgment will be denied.

**III.     Motion *in Limine*

Plaintiff has retained Surendra Sivarajah, M.D., Penn State College of Medicine, Diabetes Director, Division of Endocrinology, Diabetes, and Metabolism as an expert. Defendant filed a motion *in limine* to exclude Dr. Sivarajah's testimony on the basis that the report and purported testimony fails to satisfy the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*

The admissibility of expert testimony is governed, in part, by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

The District Court has broad discretion in determining the admissibility of expert testimony. *See Walker v. Gordon*, 46 F. App'x 691, 694 (3d Cir. 2002) (citing *Kumho Tire v. Carmichael*, 526 U.S. 137, 152-53 (1999)). The Third Circuit has set forth three criteria to determine whether a proposed witness may qualify as an expert:

17

qualification, reliability, and fit. *Schneider v. Fried*, 320 F.3d 396, 405 (3d Cir. 2003). Doubts about admissibility should be resolved in favor of admission. *Giorgini v. Ford Motor Co.*, No. 06-cv-968, 2008 WL 859230, *5 (E.D. Pa. Mar. 28, 2008).

To be qualified, the expert witness must possess specialized knowledge regarding the area of testimony, which is liberally interpreted as "a broad range of knowledge, skills, and training." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000); *In re TMI Litig.*, 193 F.3d 613, 664 (3d Cir. 1999). An expert's opinion is reliable when it is "based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000). Lastly, "fit" is satisfied when an expert's testimony assists the trier of fact. *Id.* at 145.

As to Dr. Sivarajah's qualifications, he possesses specialized knowledge of diabetes, the affects diabetes has on individuals, and health and safety issues related to diabetes. While the court agrees with Defendant in that Dr. Sivarajah is not an expert in DOT and commercial licensing standards, Dr. Sivarajah can provide an expert medical opinion regarding how Plaintiff's diabetes effects his health and ability to perform the functions of his job. This type of testimony would assist the trier of fact in determining whether Plaintiff could safely drive one of Defendant's vehicles with or without an accommodation.

However, in Dr. Sivarajah's expert report, several of his opinions exceed the scope of his expertise. (Dr. Sivarjah's Expert Report, pp. 5-6.) Specifically, Dr. Sivarajah's testimony is limited as follows:

1) Dr. Sivarajah cannot testify that Defendant's actions were discriminatory and contrary to law but can testify regarding his opinion that Plaintiff can fulfil the physical requirements of the job. (*Id.* at 5-6, ¶¶ 5-6.)

2) Dr. Sivarajah is precluded from testifying to his opinion set forth in paragraph 7 of his report. (*Id.* at 6, ¶ 7.) However, he can opine regarding whether Plaintiff poses a danger to himself or others when driving.

Accordingly, Defendant's motion *in limine* will be granted in part and denied in part.

## IV. Conclusion

For the reasons stated herein, the court will deny Plaintiff and Defendant's motions for summary judgment (Docs. 17 & 22), and grant in part and deny in part Defendant's motion *in limine* (Doc. 25). An appropriate order will follow.

s/Sylvia Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated: April 2, 2019